Andrew J. Guzzo (HI-SBN 010586)
KELLY GUZZO, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 7400
Honolulu, HI 96813
Telephone: 808-664-8641
Email: aguzzo@kellyguzzo.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JI-HYE PARK, *on behalf of herself and all similarly situated individuals*, <br><br>                    Plaintiff, <br><br>v. <br><br>BANK OF AMERICA, N.A., <br><br>                    Defendant. | Civil No. 1:22-cv-382 |

## CLASS ACTION COMPLAINT

1. Plaintiff Ji-Hye Park, on behalf of herself and all similarly situated individuals, alleges as follows for her Class Action Complaint against Defendant Bank of America, N.A.

## PRELIMINARY STATEMENT

2. "Congress enacted [the Truth in Lending Act ("TILA")] to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise confusing practices." *McPartland v. Chase Manhattan Bank*

*USA, N.A.*, No. 1:22-cv-00284, 2022 WL 1810979, at *4 (M.D. Pa. June 2, 2022) (quoting *Cappuccio v. Prime Cap. Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011)).

3. Concerned that uninformed cardholders would encounter abuse in a growing credit card industry, Congress enacted several requirements in TILA to limit the cardholder's liability for "unauthorized" charges. *See* 15 U.S.C. § 1643(a)(1). These include placing the burden of establishing cardholder liability on the card issuer, *see id.* § 1643(b); imposing criminal sanctions for the fraudulent use of credit cards, *see id.* § 1644; and providing individuals a private right of action against creditors for any violation of TILA, *see id.* § 1640(a)).

4. Section 1643 also prohibits credit card issuers from holding cardholders responsible for unauthorized charges "without complying with specific requirements." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 442 (3d Cir. 2018). Relevant here, a card issuer must have provided "a method whereby the user of such card ***can be identified as the person authorized to use it***." 15 U.S.C. § 1643(a)(1)(F) (emphasis added); *see also* 12 C.F.R. § 1026.12(b)(2)(iii).

5. This means that a cardholder cannot be held responsible for an unauthorized "card-not-present" (*i.e.*, remote) transaction under any circumstances. *See* Official Interpretations to 12 C.F.R. § 1026.12(b) ("The cardholder may not be held liable under § 1026.12(b) when the card itself (or some other sufficient means of identification of the cardholder) is not presented. Since the issuer has not provided

2

a means to identify the user under these circumstances, the issuer has not fulfilled one of the conditions for imposing liability. For example, when merchandise is ordered by telephone or the Internet by a person without authority to do so, using a credit card account number by itself or with other information that appears on the card (for example, the card expiration date and a 3- or 4–digit cardholder identification number), no liability may be imposed on the cardholder.").

6. This provision has particular importance in the wake of the COVID-19 pandemic because traditional modes of commerce (*e.g.*, brick and mortar shopping) are being rapidly replaced by e-commerce (*e.g.*, online shopping). The ability to pay for goods and services is no doubt easier, and credit card transactions can be performed at anytime from anywhere in the world.

7. Fraudsters have likewise benefitted from this ease of doing business online. Even before the pandemic, card-not-present fraud—or remote fraud—had become the fraudster's weapon of choice. For example, a 2018 study from the Federal Reserve showed that card-not-present fraud jumped from $3.4 billion in 2015 to $4.57 billion in 2016, while card-present fraud in the United States declined from $3.68 billion to $2.91 billion during the same period. Federal Reserve, *Changes in U.S. Payments Fraud from 2012 to 2016* (Oct. 2018), https://www.federalreserve.gov/publications/2018-payment-systems-fraud.htm (last visited July 15, 2022).

8.      The Federal Trade Commission has likewise reported a boom in identity theft cases involving credit cards:



Federal Trade Commission, *Compare Identity Theft Report Types* (May 5, 2022), *available at* https://public.tableau.com/app/profile/federal.trade.commission/viz/IdentityTheftReports/TheftTypesOverTime (last visited July 18, 2022).

9.      Because TILA protects cardholders in the event of card-not-present fraud, card issuers face a dilemma and must sustain the loss itself. Bank of America, however, appears to refuse to shoulder this burden as it would cost it millions of dollars each year. Instead, it holds its cardholders liable for unauthorized transactions even when it is apparent that the charge was unauthorized.

10. The cardholder is then left with no recourse other than to file suit, pay the unauthorized charge, or face interest, fees, and other negative consequences, like negative credit reporting.

11. Plaintiff, for example, alerted Bank of America to two unauthorized transactions involving a company purportedly named "Axus LLC." Bank of America denied Plaintiff's unauthorized use claims even though the merchant's so-called "evidence" of the transactions in no way established that Plaintiff authorized them. To the contrary, the merchant's documents showed that the transactions were performed using an IP address in Taipei, Taiwan. Even worse, Bank of America ignored that "Axus LLC"—a purported Delaware limited liability company—is not and has never been registered to do business in Delaware. Put simply, in the absence of any scrutiny, Bank of America blindly relied on the merchant's "proof" and correspondingly denied Plaintiff's valid unauthorized use claims.

12. By holding Plaintiff liable for unauthorized transactions, Bank of America violated 15 U.S.C. § 1643. Plaintiff, therefore, is entitled to her actual damages, attorneys' fees, and costs. *See* 15 U.S.C. §§ 1640(a)(1),(3).

13. Additionally, because Bank of America's conduct appears to be a systematic policy to hold its cardholders liable for unauthorized transactions, Plaintiff brings this action on behalf of herself and all similarly situated individuals.

14. Plaintiff and the class are entitled to their actual damages and statutory damages up to "$1,000,000 or 1 per centum of the net worth of" Bank of America. *Id.* § 1640(a)(2)(B).

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1331.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, where Plaintiff resides.

## PARTIES

17. Plaintiff is a natural person and a "person" as defined by 15 U.S.C. § 1602(e).

18. Bank of America is a national association doing business in Hawaii through its registered office in Honolulu. Bank of America is a creditor as defined by 15 U.S.C. § 1602(g).

## FACTS

19. On January 19, 2022, at approximately 6:05 p.m. HST, Plaintiff received a "fraud alert" text message from Bank of America.

20. The text message asked Plaintiff whether she used her credit card for three attempted transactions.

21. The first two transactions involved a merchant identified as "TBM Corp" in the amount of $3,000.00. The text message stated that the TBM Corp transactions had been "declined."

22. The third transaction involved a merchant identified as "Axus LLC" in the amount of $2,000.00. The text message stated that the Axus LLC transaction had been "approved."

23. Because she authorized none of the transactions, Plaintiff responded "NO" at approximately 6:35 p.m. HST.

24. Despite Plaintiff's prompt notice to Bank of America that she did not authorize the Axus LLC transaction, Bank of America subsequently billed her for two similar charges, each in the amount of $2,000.00.

25. After Plaintiff disputed those charges by telephone, Bank of America temporarily credited her account in the amount of $4,000.00.

26. On or about March 2, 2022, Bank of America reposted the Axus LLC transactions to Plaintiff's account.

27. Bank of America provided Plaintiff no basis for its decision.

28. On March 11, 2022, Plaintiff filed a report with the Honolulu Police Department, which verified that Plaintiff did not perform the Axus LLC transactions.

29. Plaintiff then requested that Bank of America reconsider its decision because she had never transacted any business with Axus LLC.

30. Plaintiff made clear to Bank of America that she did not authorize the $2,000.00 transactions and that she should not be held responsible for them.

31. On or about April 4, 2022, Bank of America mailed Plaintiff a letter, again rejecting her request to not be held liable for the unauthorized transactions. That letter stated:

> As you requested, we completed a re-evaluation of your credit card dispute for $4,000.00 – unfortunately, our decision to decline your fraud claim for this transaction(s) hasn't changed. If your claim included other disputed charges, you'll receive a separate letter letting you know when they've been resolved.
>
> Our research included the information you provided with your claim, your account history, and if available, information from the merchant, such as a signed receipt or contract. We confirmed the following:
>
> - The merchant provided documentation confirming you received the merchandise or service.

32. Bank of America did not include with its letter any of the information on which it relied, like the purported proof provided by Axus LLC, the merchant.

33. Perplexed as to how Bank of America could have reached this clearly erroneous decision, Plaintiff mailed Bank of America a letter on June 9, 2022, which again made clear that Plaintiff did not authorize the Axus transactions:.

> On or about January 20, 2022, two transactions that **I did not perform** posted to my Bank of America credit card account ending in -2266. Those transactions—each in the amount of $2,000.00—were credited to Axus LLC, which appears to be a motor products company based in

8

California. **I did not transact business with Axus LLC at that time, and I have never transacted business with Axus LLC**.

Because the charges were not mine, I immediately advised Bank of America that the account activity was fraudulent and not authorized. Bank of America then credited my account in the amount of the fraudulent transactions ($4,000.00 total) on or about January 22, 2022. The credits are reflected on my credit card statement for the period between January 7 and February 6, 2022. A little over one month later, on or about March 2, 2022, Bank of America re-charged my account for the transactions. The re-added transactions are on my statement dated February 7 to March 6, 2022.

Then, on April 4, 2022, I received a letter from Bank of America, stating:

> Our research included the information you provided with your claim, your account history, and if available, information from the merchant, such as a signed receipt or contract. We confirmed the following:
>
> - The merchant provided documentation confirming you received the merchandise or service.

Bank of America, however, provided no such evidence with its letter. More concerning, Bank of America's explanation appears to relate to a claim that I did not receive the merchandise or service supposedly contracted for. Of course, my claim was never that I did not receive merchandise or services. **My claim was and is that I never performed transactions with Axus LLC and that I am not responsible for the Axus LLC transactions**. Under the Truth in Lending Act, Bank of America cannot hold me responsible for transactions that I did not authorize.

9

> I again ask that Bank of America **remove the transactions and any interest charged** related to those transactions from my account balance. If Bank of America refuses to remove the transactions, I ask that Bank of America **provide me with the evidence** on which it is purportedly relying.

(Emphasis in original.)

34. On or about June 27, 2022, Bank of America responded by sending Plaintiff five separate letters, each stating: "As you requested, here's a copy of the documentation we used to resolve your claim."

35. Each letter enclosed scattered documents that Axus LLC ostensibly provided to Bank of America. Together, the documents appear to suggest—though very unconvincingly—that Axus LLC prepared a resume for Plaintiff and provided her with access to other career help-related services.

36. In reality, the documents are barely legible and among them are several obvious indicators that Plaintiff did not authorize the transactions or benefit from them.

37. Most notably, the documents identify Plaintiff's IP address—the one from which the transactions were authorized—as "Taipei, Taiwan."

38. Plaintiff, of course, lives in Hawaii as evidenced by the address associated with her account. She also has never been to Taiwan or used her Bank of America credit card there, which Bank of America knew or had reason to know.

39. Additionally, the merchant claimed to be a Delaware limited liability company, but Axus LLC is not and has never been registered to do business in Delaware. Bank of America easily could have determined this fact by completing a free online search. The documents also incorrectly identify Delaware with a "DL" acronym instead of "DE."

40. Put simply, Bank of America blindly relied on Axus LLC's specious "proof" to hold Plaintiff liable for credit card transactions that she did not authorize.

41. A cursory review of the documents apparently relied on by Bank of America would have alerted Bank of America to the fraudulent nature of the transactions.

42. Upon information and belief, Bank of America invariably denies cardholder claims of unauthorized use so long as the merchant instructs it to do so.

43. Upon information and belief, Bank of America refuses to undertake any meaningful investigation because shifting the loss to the cardholder is more cost effective than ruling for the cardholder and risking a prolonged dispute with the merchant.

### COUNT ONE:
### VIOLATION OF TILA, 15 U.S.C. §§ 1640, 1643
### (Class Claim)

44. Plaintiff incorporates each of the preceding allegations.

45. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class:

> All individuals who as: (1) Bank of America credit cardholders; (2) disputed as unauthorized one or more credit card charges that were performed over the telephone or the internet; (3) and were held responsible for such unauthorized charges because the merchant contested the chargeback (4) during the one-year period before this Complaint was filed.

Plaintiff is a putative class member.

46. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following subclass:

> All individuals who as: (1) Bank of America credit cardholders; (2) disputed as unauthorized one or more credit card charges; (3) arising from transactions outside the United States; (4) that were performed over the telephone or the internet; (5) and were held responsible for such unauthorized charges; (6) during the one-year period before this Complaint was filed.

Plaintiff is a putative subclass member.

47. **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The class members' names and addresses can be identified through Bank of America's internal business records, and the class members may be notified of the pendency of this action by published or mailed notice

48. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ

between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Bank of America violated § 1643 by holding its cardholders liable for unauthorized use of their credit cards; (2) whether Bank of America regularly rejects unauthorized use claims when a merchant contests a chargeback through chargeback representment; and (3) the appropriate amount of statutory damages given the frequency and persistence of failures of compliance by Bank of America, the resources of Bank of America, the number of persons adversely affected, and the extent to which Bank of America's failure of compliance was intentional.

49. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claim is typical of the claim of each putative class member. Plaintiff is also entitled to relief under the same cause of action as the other putative class members. All claims are based on the same facts and legal theories.

50. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests. Plaintiff has retained experienced and competent counsel; she intends to continue to prosecute the action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

51. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be nearly impossible for class members to effectively redress the wrongs done to them in individual litigation. Even class members could afford it, individual litigation would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Bank of America's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve several individual claims based on a single set of proof in a case.

52. Bank of America violated § 1643 by holding cardholders liable for unauthorized card-not-present transactions.

53. Upon information and belief, Plaintiff alleges that, as a standard practice, Bank of America denies its cardholders' unauthorized use claims so long as the merchant instructs it to do so.

54. Upon information and belief, Bank of America's conduct is a part of a broader practice of frequent and persistent noncompliance with § 1643.

55. Plaintiff and the putative class members suffered actual damages because of Bank of America's violations of § 1643.

56. Based on Bank of America's noncompliance with § 1643, Plaintiff seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1640(a).

WHEREFORE, Plaintiff demands judgment for actual and statutory damages against Bank of America; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**JI-HYE PARK**

   */s/ Andrew J. Guzzo*
Andrew J. Guzzo (HI-SBN 010586)
KELLY GUZZO, PLC
7 Waterfront Plaza
500 Ala Moana Blvd., Suite 7400
Honolulu, HI 96813
Telephone: 808-664-8641
Email: aguzzo@kellyguzzo.com

*Counsel for Plaintiff*